**No. 14-73502**

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

JOHN BRENNAN,

Petitioner

v.

U.S. DEPARTMENT OF HOMELAND SECURITY and TRANSPORTATION
SECURITY ADMINISTRATION,

Respondent

ON JUDICIAL REVIEW OF A FINAL ORDER
OF THE U.S. DEPARTMENT OF HOMELAND SECURITY,
TRANSPORTATION SECURITY ADMINISTRATION

PETITIONER'S BRIEF

submitted by:
Michael E. Rose
Of Attorneys for Petitioner
CREIGHTON & ROSE, PC
500 Yamhill Plaza Building
815 SW Second Avenue
Portland, Oregon 97204-3005
Tel.: (503) 221-1792
Fax: (503) 223-1516
E-mail: mrose@civilrightspdx.com

## TABLE OF CONTENTS

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Statement of Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Issues Presented for Review. . . . . . . . . . . . . . . . . . . . . 1

Pertinent Provisions of Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    First Amendment, United States Constitution. . . . . . . . . . . . . . . . . . . 2
    Fifth Amendment, United States Constitution. . . . . . . . . . . . . . . . . . . 2
    49 CFR §1540.109. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.     Nature of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.    Plaintiffs' Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . 3

    III.   Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    IV.   Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        A. The regulation Petitioner was found to have violated, 49 C.F.R.
          §1540.109, is impermissibly vague as applied to Petitioner's
          conduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
        B. There was no substantial evidence that the conduct interfered with
          TSA screening duties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        C. Petitioner's conduct was protected under the First Amendment
          to the United States Constitution and was therefore not an
          interference prohibited by 49 C.F.R. §1540.109. . . . . . . . . . . . 21

    V. Conclusion... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Statement of Related Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Certificate of Compliance.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Cerificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

# TABLE OF AUTHORITIES

CASES

*Ass'n des Eleveurs de Canards et D'oies du Quebec v. Harris,* 729 F.3d 937 (9th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*Baggett v. Bullitt*, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). . . . . . . . 10

*Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383, 391 (9th Cir. 2011), *affirmed* 567 U.S. __, 132 S.Ct. 2156, 183 L.Ed.2d 153 (2012).. . . . . . . . . 11, 15

*City of Erie v. Pap's A.M.*, 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*City of Portland v. Anderson*, 40 Or. App. 779, 596 P.2d 603, *rev. denied* 287 Or. 507 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*City of Portland v. Gatewood*, 76 Or. App. 74, 708 P2d 615 (1985), *rev denied*, 300 Or. 477 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Donovan v. Royal Logging Co.*, 645 F.2d 822 (9th Cir. 1981). . . . . . . . . . . . . . 11

*Fair v. Galveston*, 915 F. Supp. 873 (S.D. Tex. 1996). . . . . . . . . . . . . . . . . . . . 13

*Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 1998). . . . . . . . . . . . . . . . . . 10

*Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 1998). . . . . . . . . . . . . . . . . . 10

*Garcia v. Bloomberg*, 865 F. Supp. 2d 478 (S.D.N.Y. June 7, 2012). . . . . . . . . . 21

*Gathright v. City of Portland*, 439 F.3d 573 (9th Cir. 2006). . . . . . . . . . . . . . . . 15

*Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 16, 21

iv

*Gustafson v. Alloyd Co.*, 513 U. S. 561 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Info. Providers' Coal. for the Def. of the First Amendment v. FCC*, 928 F.2d 866 (9th Cir.1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Kaahumanu v. Hawaii*, 682 F.3d 789 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . 24

*Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) . . . . . 11

*Mayes v. Massanari*, 276 F.3d 453 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . 20

McLuhan, *Understanding Media: The Extensions of Man* (1964). . . . . . . . . . . . . 25

*Members of the City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Minority TV Project, Inc. v. FCC*, 676 F.3d 869 (9th Cir. 2012). . . . . . . . . . . . . . 26

*Rendon v. TSA*, 424 F.3d 475 (6th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Roulette v. City of Seattle*, 97 F.3d 300 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . 24

*Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Spence v. Washington*, 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974) . 24, 28

*State v. Clark*, 291 Or. 231, 630 P.2d 810 (1981) . . . . . . . . . . . . . . . . . . . . . . . . 14

*Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). . . . . . 26

*Tobey v. Jones, et al.*, 706 F.3d 379 (4th Cir. 2013). . . . . . . . . . . . . . . . . . 17, 28

*United States v. Bucher*, 375 F.3d 929 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . 12

v

*United States v. Cabaccang*, 332 F.3d 622 (9th Cir. 2003) . . . . . . . . . . . . . . . . 11

*United States v. Grisel*, 488 F.3d 844 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . 28

*United States v. Jin Fuey Moy*, 241 U.S. 394, 36 S.Ct. 658, 60 L.Ed. 1061 (1916) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Kilbride*, 584 F.3d 1240 (9th Cir. 2009) . . . . . . . . . . . . . . . 9, 11

*United States v. Ninety-Five Firearms*, 28 F.3d 940 (9th Cir. 1994). . . . . . . . . . . . 9

*United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)........ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26,28

*United States v. Petrillo*, 332 U.S. 1, 67 S.Ct., 91 L.Ed. 1877 1538 (1947). . . . . . 11

*United States v. W.R. Grace*, 504 F.3d 745 (9th Cir. 2007) . . . . . . . . . . . . . . . . 11

*United States v. Willfong*, 274 F.3d 1297 (9th Cir. 2001) . . . . . . . . . . . . . . . 12-14

*Ward v. Rock Against Racism*, 491 U.S. 781, 109 S.Ct.2746 , 105 L.Ed.2d 661 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*West Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178 87 L.Ed. 1628 (1943). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Wilson v. Chancellor*, 418 F. Supp. 1358 (D. Or, 1976). . . . . . . . . . . . . . . . . . . 25

*Yates v. United States*, No. 13-7451, ___ U. S. ___ (25 February, 2015) . . . . . . . 15

STATUTES

42 U.S.C.§ 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

49 U.S.C. §46110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

REGULATIONS

49 C.F.R §1503.655 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

49 C.F.R. §1503.601, *et seq.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

49 C.F.R. §1503.657. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9, 28

49 C.F.R. §1503.661. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

49 C.F.R. §1540.109. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii, 1, 2, 8, 9, 15, 20

CONSTITUTIONAL PROVISIONS

Article I, section 8, of the Oregon Constitution. . . . . . . . . . . . . . . . . . . . . . . . 26

Fifth Amendment, United States Constitution. . . . . . . . . . . . . . . . . . . . . . . . . 10

First Amendment, United States Constitution. . . . . . . . . . . . . . . . . . 2, 8, 21, 23, 26

Fourteenth Amendment, United States Constitution . . . . . . . . . . . . . . . . . . . . . 14

OTHER AUTHORITIES

*Black's Law Dictionary* (7th ed.1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## STATEMENT OF JURISDICTION

This is a Judicial Review of a Final Order of the U.S. Department of Homeland Security, Transportation Security Administration in favor of Respondent Agency and against Petitioner. The Agency sought to impose a civil penalty against Petitioner for his alleged violation of 49 C.F.R. §1540.109. A hearing was conducted before an Administrative Law Judge (ALJ) pursuant to 49 C.F.R. §1503.601, *et seq.*, after which an Initial Decision was rendered. 49 C.F.R §1503.655. Petitioner appealed to the TSA decision maker pursuant to 49 C.F.R. §1503.657, who, in his Final Order, denied the appeal and upheld the Initial Decision. This court has jurisdiction to review the Final Order pursuant to 49 U.S.C. §46110 and 49 C.F.R. §1503.661.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Was regulation Petitioner was found to have violated, 49 C.F.R. §1540.109, prohibiting interference with TSA screening duties, impermissibly vague as applied to Petitioner's conduct?

2.      Was there substantial evidence in the record from which the Agency could conclude that the conduct of Petitioner "interfered with" the screening duties of the TSA, in violation of 49 C.F.R. §1540.109?

3.      Did the Agency err in determining that Petitioner was not engaged in

1

activity protected under the First Amendment to the United States Constitution?

## PERTINENT PROVISIONS OF LAW

### First Amendment, United States Constitution

Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

### Fifth Amendment, United States Constitution

No person shall be. . . deprived of life, liberty, or property, without due process of law[.]

### 49 C.F.R. §1540.109.

No person may interfere with, assault, threaten, or intimidate screening personnel in the performance of their screening duties under this subchapter.

## STATEMENT OF THE CASE

### I.    Nature of the Case

A Final Order of the TSA upheld the ALJ's decision affirming the Agency's imposition of a civil penalty against Petitioner for his alleged violation of 49 C.F.R. §1540.109. Petitioner seeks reversal of that Final Order.

2

## II.　　**Plaintiffs' Statement of Facts**

Petitioner, John Brennan, is a frequent airline flyer who is familiar with Transportation Security Administration (TSA) procedures in place for ticketed passengers in the ABC security screening area at Portland International Airport (PDX). ER - 79-80  (Tr. at 150-1). On April 17, 2012, Petitioner, as a ticketed passenger, presented himself for screening at the ABC checkpoint at PDX. ER - 81 (Tr. at 153). The purpose of the TSA screening is to check passengers for prohibited items, *viz.*, explosives and weapons.[1] ER - 73  (Tr. at 103). While in line, and in response to the request of a TSA official, Petitioner removed several items of his clothing, including his shoes, belt, sweater and jacket, and placed them in the familiar "tub" for x-ray screening. ER - 81-2  (Tr. at 153-4). As part of the screening process, passengers are given an opportunity to opt out of the screening by the electronic device and, in its stead, to submit to a full pat-down search. ER - 50  (Tr. at 13). As is his standard practice, Petitioner opted out of the electronic screening, which then required Transportation Security Officer (TSO) Van Gordon toremove him from the screening line to a separate individualized screening location to conduct a full pat-down search of Petitioner. ER - 81, 83, 50  (Tr. at 153, 155, 13).

---

[1] "Incendiaries" are also included in the list of prohibited items. *See* 49 CFR §1540.5.

As Van Gordon, wearing gloves, conducted the pat-down search, Petitioner audibly narrated the TSO's actions, providing Petitioner with a degree of comfort during the pat-down search. ER - 85-6  (Tr. at 157-8). The narration, while out of the ordinary, was not of any concern to the screener nor did is disrupt the screening process. SE Initial Decision, at4, ¶16 (ER - 4). Van Gordon then tested the gloves with the Explosive Trace Detection (ETD) machine, that attempts to detect particles of explosive material, to check for anything the gloves may have picked up during the pat-down. ER - 51  (Tr. at 16). Petitioner was informed by Van Gordon that he was being tested for "explosives." ER - 50, 87 (Tr. at 16, 159). As a result of the test the machine sounded an alarm indicating that something had been detected on the glove. ER - 52  (Tr. at 27). Petitioner was informed by the STSO Nichols that he had tested positive for nitrates. ER - 55, 88  (Tr. at 47, 161). Brennan equated this with the TSA's suspicion that he was carrying a bomb. ER - 84  (Tr. at 156).

As an act of protest, he removed his clothing, to demonstrate the absurdity of that suspicion and the entire process leading up to it, and to quickly to prove he was not carrying any explosives. ER - 76, 89-90  (Tr. at 116, 162-3).

By disrobing, Petitioner presented himself for the resolution screening entirely bare skinned. ER - 58 (Tr. at 58). There was no need for the TSO to pat

4

down bare skin, since it immediately revealed itself ("You can see it."). ER - 51,
53, 58, 66  (Tr. at 16, 32, 58, 76). Petitioner had already been patted down, and a
visual inspection of the disrobed Petitioner by TSO Van Gordon revealed that he
had neither explosives nor weapons. ER - 58  (Tr. at 58). Having observed Brennan
standing there in the buff, STSO Nichols also figured that it was safe to conclude
that Brennan had no weapons or explosives on his person. ER - 66  (Tr. at 76).

After Petitioner had removed his clothes, during which he demonstrated to
the satisfaction of TSO Van Gordon (ER - 58, 61; Tr. at 58, 60) and STSO Nichols
(ER - 66; Tr. at 76) that he had no weapons or explosives (or, presumably,
incendiaries) on his person, the only thing left to be done in the screening process
was to conclude the resolution screening of his clothing and property that was
required because of the ETD alarm. ER - 53, 62  (Tr. at 32, 61).  Petitioner's
property could not be cleared and released until the further screening was
accomplished. ER - 62  (Tr. at 61).

The next step in the process ordinarily is for the subject to be removed to a
private screening area for deeper screening. ER - 56  (Tr. at 56). Despite the fact
that the TSA personnel could have moved Petitioner to a private screening area a
mere 75 feet away, they did not do so. ER - 71, 72, 74   (Tr. at 100, 101, 105).
Instead, in response to his seeing Petitioner standing there with no clothes on,

5

Supervisory Transportation Security Officer (STSO) David closed *all* of the security screening lanes at the ABC checkpoint had ordered that Mr. Brennan be surrounded by a wall of bins, to cover his nakedness. ER - 67-8, 70 (Tr. at 93-4, 96); TSA Exhibit A. This action taken by the TSA in response to Petitioner's disrobing was not required by any identified TSA policy but was, rather, the decision of STSO David. ER - 70 (Tr. at 96). At least one of the lanes was reopened while Mr. Brennan still stood there. *Id.* As it turned out, the STSO's fear that Petitioner's actions would be a dangerous diversion was not borne out by the events of the day. ER - 75 (Tr. at 106).

So they all continued to stand around the ETD machine. Petitioner did not interfere with or block TSA access to his property on the table or his clothing at his feet to conduct its final screening. ER - 54, 63-4, 66 (Tr. at 35, 62-3, 76). However, a resolution screening of Petitioner's clothing and other property could not be done because, at the request of TSA, Port of Portland police officers were dispatched to the location of Petitioner's resolution search and, when they arrived, they took possession of Petitioner's clothing and other property from the TSA screeners. ER - 57, 61, 64, 65 (Tr. at 57, 60, 63, 75).[2] Had the Port officers not

---

[2] It may be that TSA viewed its screening duties as having been suspended even before the arrival of the Port of Portland officers, at the moment the Port of Portland was called (ER - 65; Tr. at 75): "TSO Nichols: [O]nce we called the Port police they take over the – the incident." "TSO Van Gordon: [N]o further

arrested Petitioner and seized his property, there was nothing that would have prohibited TSA from concluding the screening and clearing Petitioner and his property. *Id*.

During the entire ordeal, Petitioner was neither angry, belligerent nor abusive to any TSA or Port of Portland officer nor to anyone else. He did not use profanity or vulgarity; nor did he try to assault any or Port of Portland TSA officer. Petitioner stood perfectly still and was polite and courteous throughout. ER - 59, 77, 157 (Tr. at 50, 157, 118); TSA Exhibit A.

Petitioner was never told that his actions were interfering with TSA officer's duties or that it was necessary for him to put his clothes on to continue and complete the screening process. ER - 60, 94 (Tr. at 51, 169). Petitioner was never told by TSA that his actions were interfering with the screening process or that his actions were causing TSA to be less efficient in the performance of their duties. ER - 91 (Tr. at 164). Petitioner did not think that his being naked would distract TSA screeners. "I am aware that TSA people routinely see people naked through the scanning machines and that, in fact, the difference between a naked image and a naked person isn't that great once you get to that point." ER - 95 (Tr. at 170).

---

screening is – is being done because the Port police are en route." ER - 64 (Tr. at 63).

Petitioner was arrested by Port of Portland officers, taken into custody, detained and cited for the crimes of indecent exposure, in violation of the Portland City Code, and disorderly conduct, under State law. He was ultimately prosecuted for the crime of indecent exposure in State court. ER - 78 (Tr. at 120). Petitioner was acquitted of the charge after a trial, based on the trial court's conclusion that his nudity was protected political expression under Article 1, Section 8, of the Oregon Constitution, and was therefore not criminal. ER - 78, 93-4 (Tr. at 120, 166-7).

### III.   Summary of the Argument

The regulation Petitioner was found to have violated, 49 C.F.R. §1540.109, prohibiting interference with TSA screening duties, is impermissibly vague as applied to Petitioner's conduct. Thus, the imposition of a civil penalty for his conduct was inconsistent with applicable law. There was no substantial evidence in the record that Petitioner's conduct interfered, under any permissible construction of that term, with TSA screening duties.

Even if Petitioner could be said to have "interfered," his conduct, in protesting the intrusive search procedures to which he and other airline passengers were subjected by removing his clothing to facilitate such search, was activity

8

protected under the First Amendment to the United States Constitution and was

therefore not the kind of interference prohibited by the regulation. Therefore, the

imposition of a civil penalty for such conduct, in derogation of those protected

rights, was inconsistent with applicable law.


## IV.    Argument

**A. The regulation Petitioner was found to have violated, 49 C.F.R. §1540.109, is impermissibly vague as applied to Petitioner's conduct.**

**Standard of Review**

"Whether a statute or regulation is unconstitutionally vague is a question of

law reviewed *de novo*." *Ass'n des Eleveurs de Canards et D'oies du Quebec v.*

*Harris,* 729 F.3d 937, 946 (9th Cir. 2013)*, quoting United States v. Ninety-Five*

*Firearms*, 28 F.3d 940, 941 (9th Cir. 1994).[3]

---

[3] It is not argued that the regulation is facially vague. For one thing, a facial vagueness challenge to the regulation was not properly at issue in the proceedings below, nor judicially reviewable by this court. 49 CFR § 1503.607. (b)(1)(v). In addition, it cannot be said that it is vague in all of its possible applications. *United States v. Williams*, 553 U.S. 285, 304, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008), *quoting Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-495, 102 S. Ct. 1186, 71 L. Ed. 2d 362 & nn. 6-7 (1982). *But see United States v. Kilbride*, 584 F.3d 1240, 1258 (9th Cir. 2009) (noting a relaxed "'requirement in the First Amendment context, permitting plaintiffs to argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech.' *Id.*"). In any event, even though the regulation may not be facially invalid, the application of the regulation is vague as applied to the present facts, and the imposition of a civil penalty was therefore

The findings and conclusions of both the ALJ and the Administrator determined that Petitioner had violated 49 C.F.R. §1540.109, which, as is relevant to this discussion, prohibits interference with TSA screening duties.[4] "Interfere with," as used in the regulation, is undefined and only vaguely understandable as applied to Brennan's conduct.

The constitutional proscription against vague laws, by which "[a]n enactment is void for vagueness if its prohibitions are not clearly defined," is "a basic principle of due process." *Grayned v. City of Rockford*, 408 U.S. 104, 108,92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). The Fifth Amendment Due Process clause requires that persons of ordinary intelligence should have a reasonable opportunity to know what is prohibited, so that they may act accordingly, and that the standards should be clear enough to curb the danger of arbitrary or discriminatory enforcement. The need for clarity is enhanced when criminal sanctions are at issue or, as here, when the enactment "'abut[s] upon sensitive areas of basic First Amendment freedoms.'" *Id*. at 109 *(quoting Baggett v. Bullitt*, 377 U.S. 360, 372, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964)); *see* discussion, *post*, at    . *See also Foti v.*

---

contrary to applicable law and was prejudicial error, and thus reviewable. 49 CFR § 1503.657(b)(2) and (3).

[4] There is neither evidence, allegation nor suggestion that petitioner was in any way assaultive, threatening or intimidating, the other three behaviors prohibited by the regulation.

10

*City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998). Even in the strictest sense, however, due process does not require "mathematical certainty" in the language of such enactments, *Grayned*, 408 U.S. at 110 (footnote omitted), nor does it mandate "'impossible standards' of clarity." *Kolender v. Lawson*, 461 U.S. 352, 361, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (*quoting United States v. Petrillo*, 332 U.S. 1, 7-8, 67 S.Ct., 91 L.Ed. 1877 1538 (1947)). *See Info. Providers' Coal. for the Def. of the First Amendment v. FCC*, 928 F.2d 866, 874 (9th Cir.1991). Vagueness analysis applies to administrative rules and regulations as well as to statutory enactments. *Ass'n des Eleveurs de Canards*, 729 F.3d at 946, *quoting Donovan v. Royal Logging Co.*, 645 F.2d 822, 831 (9th Cir. 1981).

Regulatory enactments are to be construed in the same manner as statutes. *See*, *e.g.*, *Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383, 391 (9th Cir. 2011), *affirmed* 567 U.S. __, 132 S.Ct. 2156, 183 L.Ed.2d 153 (2012). Absent an explicit definition, a term in an enactment is to be understood "according to its ordinary, contemporary, common meaning." *United States v. W.R. Grace*, 504 F.3d 745, 755 (9th Cir. 2007) (*quoting United States v. Cabaccang*, 332 F.3d 622, 626 (9th Cir. 2003) (en banc)) (alterations and internal quotation marks omitted); *Kilbride*, 584 F.3d at 1257.

With that in mind, what is meant by the term "interfere with" is less than

11

clear. The dictionary definition propounded by petitioner was "to come in collision: to be in opposition: to run at cross-purposes: CLASH." This appears to be the most-germane definition in *Webster's Third International Dictionary* (*Unabridged*), 1178 (2002). Resp. Brief at 10; *see* complete list of definitions at 13, *post*.

The ALJ propounded several other "equally legitimate" definitions of the term, including "hindering government employees in performing their official duties" and "refusing to comply with instructions of government employees performing their official duties." Decision and Order, at 13 (ER - 15). In reaching that conclusion, the ALJ relied on two panel decisions of this court, namely *United States v. Willfong*, 274 F.3d 1297 (9th Cir. 2001) and *United States v. Bucher*, 375 F.3d 929 (9th Cir. 2004). Both cases proceeded from the premise that, absent any other direction, the starting place for interpreting the meaning of terms undefined by the legislature or agency is the plain language of the provision, applying the common meaning of a word. In ascertaining that common meaning, both relied on the definition found in the third college edition of *Webster's New World Dictionary* (1998) – "to oppose, intervene, hinder, or prevent" – and both declared themselves to be expressing the clear, unambiguous, everybody-knows-what-this-means meaning. The court in *Bucher*, *Tr.* at 932, added another definition:

12

"'interference' means an 'act of meddling in another's affairs . . . [a]n obstruction or hindrance.' *Black's Law Dictionary*, 818 (7th ed.1999)." Significantly, however, neither court considered the "interfere with" language in the context of TSA regulations nor in the context of vagueness.

The ALJ concluded the discussion with the decision of the 6th Circuit Court of Appeals in *Rendon v. TSA*, 424 F.3d 475, 480 (6th Cir. 2005), which limited the meaning to "only that conduct which poses 'an actual hindrance to the accomplishment of a specified task[,]'" deriving this definition from the opinion in *Fair v. Galveston*, 915 F. Supp. 873, 879 (S.D. Tex. 1996), which flatly proclaimed it to be true without citation of authority. The ALJ concluded that the term "interfere with" includes "actions that hinder or distract screeners in the performance of the screening process, as well as refusal to comply with directions given by screeners." ER - 17 (Initial Decision, at 15). The Final Decision and Order, at 7, adopted the ALJ's reading. ER - 43.

On the other hand, the question is far from settled. Judge Noonan's dissent in *Wilfong,* 274 F.3d at 1304-5, is instructive:

> "As to the meaning of the word, the court cites a popular college dictionary and follows it up with a thirty-year-old case telling us that the word needs no definition. The meaning deserves more attention than that.
>
> "The following summarizes the definitions to be found in *Webster's*

13

*Third New International Dictionary* (1981):

"After giving the etymology (from Latin *inter* and *ferire* (to strike)), the dictionary gives as the first definition 'to strike one foot against the opposite foot in walking or running – used esp. of horses.' Definition 2 is 'to come in collision; to be in opposition; to run at cross purposes: Clash'. Definition 3 is 'to take a part in the concerns of others: Intermeddle, Interpose, Intervene.' Definition 4 is obsolete. Definition 5 is 'to act reciprocally so as to augment, diminish, or otherwise affect one another – used of waves.' Definition 6 is 'to claim substantially the same invention.' Definition 7 is 'of a football player: (a) to run ahead of the ballcarrier . . . (b) to hinder illegally an attempt of a player to receive a pass or make a fair catch.'

"The etymology of 'interfere' – its derivation from 'strike' – and every one of its several meanings, as well as the examples of usage furnished by the dictionary, show that 'to interfere' is to take an action of some kind."

Judge Noonan concluded that to equate "to interfere" with "to fail to obey an officer" was contrary to the plain meaning of "interfere." *Id.*, at 1304-5.

The courts in Oregon have also long been troubled by the term. In *City of Portland v. Anderson*, 40 Or. App. 779, 596 P.2d 603, *rev. denied* 287 Or. 507 (1979), the court explained why the term was vague as a matter of due process:[5]

"In the ordinance in question, the word 'interfere' is not defined, and it is not, as the City contends, a word which has an 'ordinary and unmistakable meaning to all persons of common understanding.' Its dictionary definition includes: to meddle; to enter into or take a part in

---

[5] The court is plainly referring to the 14th Amendment due process clause, since the Oregon Constitution doesn't have one. *See State v. Clark*, 291 Or. 231, 235 n 4, 630 P.2d 810 (1981) ("'due process' must refer to [the] federal clause * * * since the phrase does not appear in the Oregon Constitution").

the concerns of others: intermeddle, intervene, interpose; to be in opposition. The elasticity and subjective nature of the ordinance is apparent, particularly when it is considered that it does not require a specific intent. . . For all that appears, the conduct could be innocent or negligent, yet 'interfere' with the officer. Further, the ordinance does not specify whether the 'interference' must be by physical contact, or whether it may be by words or gestures."

Also this court noted in *Gathright v. City of Portland*, 439 F.3d 573 (9th Cir. 2006), an Oregon state court has struck down a City of Portland ordinance as overly broad and vague as to what an unreasonable "interference" might be.

It must also be observed that part of the understanding of plain language of the regulation must include a reading of the regulation as a whole. *Yates v. United States*, No. 13-7451, ___ U. S. ___, ___ (25 February, 2015) (slip op. at 7-8) "Interfere with" begins a string of four prohibited behaviors: "interfere with, assault, threaten, or intimidate." 49 CFR §1540.109. The words in the string should be construed similarly. As Justice Alito explained in *Yates. id.* (concurring, slip op. at 1):

> "The *noscitur a sociis* canon instructs that when a statute contains a list, each word in that list presumptively has a "similar" meaning. *See, e.g., Gustafson v. Alloyd Co.*, 513 U. S. 561, 576 (1995). A related canon, *ejusdem generis* teaches that general words following a list of specific words should usually be read in light of those specific words to mean something "similar." *See, e.g., Christopher v. SmithKline Beecham Corp.*, 567 U. S. ___, ___ (2012) (slip op., at 18)."

In the regulation, the last three words in the string share an element of

15

aggression, and all three suggest an intentional kind of aggression. When viewed in that kind of verbal environment, interfere is readily understood to require a similar element of willful aggressiveness.

Of course, none of these cases is authoritative, nor binding on this court in its consideration of the meanings of "interfere with" in the context of *this* regulation, but they do strongly suggest that the meaning of the term "interfere with" is not nearly so settled, nor so commonly understood, as to avoid the problems of its vagueness in its application to the facts of this case.

The uncertainty of the meaning of "interfering with" is especially significant since it abuts on – or steps on – sensitive areas of basic First Amendment freedoms. *Grayned*, 408 U.S. at 109. *See* discussion, *post*, at . In such cases, the need for clarity is even greater.

Turning to the particular application in this case, the analytical task is simplified in that it is narrowly focused in time. Nothing of any particular interest happened until the alarm went off on the ETD machine and Petitioner became aware that he had changed from a focus of routine screening to a focus of suspicion. Brennan equated this with the TSA's suspicion, bordering on an accusation, that he was carrying a bomb. ER - 84 (Tr. at 156).

At the point that the alarm went off, the screening protocol provided that the

subject – Mr. Brennan – be trundled off to a private screening are where he would be even more intrusively patted down, his property thoroughly rescreened, after which, assuming nothing turned up, he would be sent on his way. ER - 89, 94 (Tr. at 162, 169).

What Brennan did was to doff his clothing, as an act of protest, to demonstrate the absurdity of that suspicion and the entire process leading up to it, and to quickly to prove he was not carrying any explosives. ER - 76, 88-9 (Tr. at 116, 162-3).

It did have the latter effect. As both Van Gordon and Nichols testified, as far as the screening process went, his action had two consequences: it made the next pat down impossible, because screeners don't touch bare skin, (ER – 53, 58, 66; Tr. at 32, 58, 76), while, at the same time it entirely obviated the need for any further such pat down since both Van Gordon and Nichols were quite satisfied that he had no prohibited items on his person, the search for which was the sole purpose of the pat-down. *Id*.

Since Brennan's action had the effect of dispensing with the next step of the process, a common understanding of the term "interfere with" would not have classified Brennan's conduct of removing his clothes and leaving them off as interference with anyone's screening duties. Rather, a reasonable understanding of

17

the circumstance might lead one to believe that Brennan was actually facilitating the screening process. As the Fourth Circuit noted in *Tobey v. Jones, et al.*, 706 F.3d 379, 389 (4th Cir. 2013): "In a sense, Mr. Tobey aided in Appellants' search for contraband by removing his t-shirt and sweatpants – at this point there were very few places he could have been hiding anything. Mr. Tobey was simply showing Appellants what they sought to see by using the AIT scanning machine."[6]

The only thing left to be done, then, was a final screening of the clothing (which was sitting on the floor at his feet) and his property on the table. Brennan did nothing that a reasonable person might understand to "oppose, intervene, hinder, or prevent" the only step left in the process. Tr. ER - 66 (Tr. at 76). That did not happen, of course, but only due to intervention of the Port of Portland Police.

As to the effect of Brennan's protest on others, any exercise of First Amendment rights are likely to be a little distracting. That is inherent in the nature of any protest that publically attempts to convey a message. There was no particular need for anyone other than the screener who was already engaged with Brennan to be in any way distracted or disrupted by Brennan's protest, which was,

---

[6] This echoes Mr. Brennan's thinking on the matter at the time. *See* Tr. at 70. This is also consistent with the observations of the observations of Van Gordon and Nichols. Tr. at 58, 60, 76.

18

by all accounts, as entirely decorous as can possibly be without clothes on.[7] Nonetheless, because STSO David gave the order, *all* screening stopped at the ABC checkpoint and TSA personnel scurried around to hide Brennan's protest from the public.

As the Court held in *Grayned*, vague laws are problematic because they (1) "may trap the innocent by not providing fair warning," (2) fail to "provide explicit standards for those who apply them," and (3) threaten "to inhibit the exercise of [First Amendment] freedoms." 408 U.S. at 108-09. Here the imprecision of the term "interfere with," when applied to a fact pattern in which it is far from obvious that any *actual* interference took place, provides little enough notice to reasonable members of the public, and little or no guidance to those who want to enforce the regulation as to what is permitted and what is forbidden. When, in addition, that application flies so close to the exercise of First Amendment freedom as to cast a chill on them, the regulation must be deemed to be impermissibly vague as applied, in contravention of the Due Process guarantee. Consequently, the imposition of a civil penalty was contrary to applicable law and was prejudicial error.

---

[7] If, on the other hand, the fact that he was protesting his treatment or his mere nudity was the disruption, then it would appear that, in this context, the regulation was being applied directly based on the content it sought to restrict, which changes the First Amendment calculus. *See* discussion, *post* .

### B. There was no substantial evidence that the conduct interfered with TSA screening duties

**<u>Standard of Review</u>**

The court reviews the agency decision to see if it is supported by substantial evidence in the record. The substantial evidence standard requires the appellate court to review the administrative record as a whole, weighing both the evidence that supports the agency's determination as well as the evidence that detracts from it. *See Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).

Even if it may be construed in the way it was by the ALJ and the Administrator – although it is not entirely clear how it ultimately was construed – there is is no substantial evidence in the record to support the finding and conclusion that Petitioner had interfered with the TSA's screening duties.

As discussed, *ante*, the evidence is, essentially, undisputed. The fact that Brennan declined to put his clothes back on when told to by the TSOs did not interfere with any of their screening duties. The fact that he took his clothing off in the first place may have offended the tender sensibilities of the STSO, who responded unnecessarily by shutting down the entire screening operation, but Brennan, who did not anticipate this untoward response, cannot be said to have caused it.

**C. Petitioner's conduct was protected under the First Amendment to the United States Constitution and was therefore not an interference prohibited by 49 C.F.R. §1540.109.**

## Standard of Review

The constitutional question presented is reviewed *de novo. United States v. Alvarez*, 617 F.3d 1198, 1201 (9th Cir. 2010); *Perry v. L.A. Police Dep't*, 121 F.3d 1365, 1367-68 (9th Cir. 1997).

As noted above, the lack of clarity in application of the language of an enactment is particularly troubling when the enactment "abut[s] upon sensitive areas of basic First Amendment freedoms." *Grayned*, 408 U.S. at 109. If, in fact, Brennan's conduct was embraced by the term "interfere with" and the application of the term is determined not to be vague, Brennan's conduct was nonetheless protected under the First Amendment to the United States Constitution and was therefore not an "interference" prohibited by the regulation.

> "What a huge debt this nation owes to its 'troublemakers.' From Thomas Paine to Martin Luther King, Jr., they have forced us to focus on problems we would prefer to downplay or ignore. Yet it is often only with hindsight that we can distinguish those troublemakers who brought us to our senses from those who were simply . . . troublemakers. Prudence, and respect for the constitutional rights to free speech and free association, therefore dictate that the legal system cut all non-violent protesters a fair amount of slack."

Hon. Jed S. Rakoff, in *Garcia v. Bloomberg*, 865 F. Supp. 2d 478, 482 (S.D.N.Y. June 7, 2012).

When he found out that the alarm on the ETD machine went off, John Brennan was, quite frankly, concerned. He was told that his clothing tested positive for nitrates, which he, not unreasonably, took to be tantamount to an accusation, by the machine and then by the human screener, of trying to secrete explosives past the security checkpoint.

He was at that point, "tired of being hassled." ER - 76 (Tr. at 116). He testified that by "hassled," he meant that every time he went through TSA security procedures, his constitutional rights to privacy and to be free from "inappropriate" searches was compromised, and he was troubled by the inflexibility in the system. He felt "that the assumption of guilt until proven innocent by going through screening is inappropriate and a huge waste of my tax dollars." ER - 89-91  (Tr. at 162-4). In protest of this erosion of his rights, "to point out the, frankly, absurdity of the accusation and to prove my innocence that I wasn't carrying explosives," ER - 89 (Tr. at 162), he removed his clothing. Every stitch of it. Given his lack of modesty about the body, and his knowledge that, as a matter of state law, nudity was a permissible form of protest, disrobing seemed the perfect way of both expressing his protest and confirming his innocence. ER - 89, 93 (Tr. at 162, 168). His hope was that, having had his say and demonstrated his innocence, perhaps, he

would simply be allowed to get dressed and catch his plane.[8] ER - 89, 94  (Tr. at 162, 169 ).

That was not going to happen. Mr. Brennan was arrested, further detained and criminally charged in state court. At his trial, he was acquitted, because his act of public nudity was protected expressive conduct under the Oregon constitution.

The question was framed by the ALJ, who "noted that he must consider whether Petitioner's actions were protected speech in order to decide whether a violation occurred." Final Order, at 3. (ER - 39). *See* Initial Decision at 8 (ER - 10):

> "Although the constitutionality of the regulation is not before me, I must nevertheless consider Petitioner's claims to the extent necessary to determine whether his actions constituted interference. I will also consider Petitioner's First Amendment claims from the standpoint of whether his conduct was Constitutionally-protected symbolic speech and, if so, whether the allegation of interference is appropriate. This will create an adequate record for review and give any reviewing court the benefit of the agency's reasoning."

There can be little question that Brennan's actions were expressive conduct within the contemplation of the First Amendment. "The Constitution looks beyond

---

[8] There were, of course, no explosives, nor any sign of explosives on or about Mr. Brennan, other than the machine's positive reading for nitrates, for which there remains no explanation – perhaps it was plant food residue, perhaps it was a machine-generated false-positive or perhaps, this being Portland, it was bacon. One of the ironies is that, had Mr. Brennan agreed to the electronic search, like just about everyone else, the non-existent explosives would never have been (mis-) detected and none of us would be here on this case.

written or spoken words as mediums of expression. . . 'Symbolism is a primitive but effective way of communicating ideas[.]' *West Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624, 632, 63 S.Ct. 1178 87 L.Ed. 1628 (1943)." *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 569, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995). Thus the First Amendment "protects not only the expression of ideas through printed or spoken words, but also symbolic speech – nonverbal activity . . . sufficiently imbued with elements of communication." *Roulette v. City of Seattle*, 97 F.3d 300, 302-03 (9th Cir. 1996) (quoting *Spence v. Washington*, 418 U.S. 405, 409, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974) (internal quotation marks omitted)). Expressive conduct is protected "so long as that conduct 'convey[s] a particularized message' and is likely to be understood in the surrounding circumstances." *Kaahumanu v. Hawaii*, 682 F.3d 789, 798 (9th Cir. 2012), quoting *Spence*, 418 U.S. at 409-11 (collecting cases). A "narrow, succinctly articulable message" is not required. *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. at 569.

While it is true that being "in a state of nudity" may not be an expressive condition in and of itself, "'[Nudity] alone' does not place otherwise protected material outside the mantle of the First Amendment." *Schad v. Borough of Mount*

24

*Ephraim*, 452 U.S. 61, 66, 101 S. Ct. 2176, 68 L. Ed. 2d 671 (1981).[9] Indeed, Brennan's nudity was inextricably intertwined with the content of his protest, which involved taking off the rest of his clothing to express his opinion of the entire TSA search policy and procedure. In the present case the conduct in which he engaged and the message he conveyed are interwoven into a single piece, recognizing the currency of

> "a [once-] popular maxim, 'the medium is the message.' The expresser's medium can affect the persuasiveness of his message, the duration of its influence, and the size and type of audience which it reaches. . . .The various school boards which restricted the media employed by Wilson here, and by Keefe, Parducci, and Sterzing in the cases cited, suppressed expression which the First Amendment protects."

*Wilson v. Chancellor*, 418 F. Supp. 1358, 1363-4 (D. Or, 1976).

The notion of medium as message (McLuhan, *Understanding Media: The Extensions of Man* (1964)) is more than merely a formerly-faddish, largely misunderstood catch-phrase of the 1960s. Rather, it describes a relationship in

---

[9] "[E]ven though political speech is entitled to the fullest possible measure of constitutional protection, there are a host of other communications that command the same respect." *Members of the City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 816, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). Nudity, even in the entertainment context, has been held to be protected under the First Amendment. *See Schad*, 452 U.S. at 65-66; *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (First Amendment protects nude dancing); *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000).

which information is seen to be inextricably intertwined with its context, such that the form of a medium embeds itself in the message, with the message embedded in the medium, creating a symbiotic relationship by which the medium influences how the message is perceived and, in a very real sense, what the message means. Brennan's act of removing his clothes to protest the intrusion on his privacy was, perhaps, an ironic but no less clear and expression of his message. Indeed, the irony – of protesting the erosion of privacy by baring one's self to public view – was a part of that message.

The focus of the protections of the First Amendment are the communicative aspects of the conduct.[10] There is little question that Mr. Brennan was engaged in that kind of communicative conduct. The only question, really, is whether those actions are protected in the present circumstance. Generally, "[a] content-neutral regulation that has an incidental effect on speech is upheld so long as it is narrowly tailored to advance a substantial government interest. *Ward v. Rock Against Racism*, 491 U.S. 781, 796-98, 109 S.Ct.2746 , 105 L.Ed.2d 661(1989). Since the

---

[10] The Oregon Court of Appeals, in *City of Portland v. Gatewood*, 76 Or. App. 74, 708 P2d 615 (1985), *rev denied*, 300 Or. 477 (1986), considering a similar question under Article I, section 8, of the Oregon Constitution, noted the communicative aspect of such behavior: "Lady Godiva's ride through Coventry to protest taxes; nude theatrical performances in outdoor arenas; or disrobing in public to protest the exploitation of females." It was under that analysis that petitioner was acquitted of his state criminal charges.

regulation itself appears to be content-neutral – although its application may not be – the question must be answered within the framework of *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).[11]

Under the *O'Brien* test,

"[a] government regulation [of expressive conduct] is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."

*O'Brien*, 391 U.S. at 376-77.

The analysis in this case is rather narrower than in the typical case. Here, Petitioner is not challenging the regulation itself on its face, but the application of two words, "interfere with," in the regulation. Petitioner does not dispute that a regulation that facilitates TSA screeners in the performance of their duties, which are to both ensure that those screened are not potentially carrying weapons and to conduct the screening of passengers as efficiently as possible, is within

---

[11] The *O'Brien* test generally governs claims involving expressive conduct, unless the statute – or regulation – at issue imposes a content based restraint. *See O'Brien*, 391 U.S. at 376-77; *see also Texas v. Johnson*, 491 U.S. 397, 404, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). In *Minority TV Project, Inc. v. FCC*, 676 F.3d 869, 872-74 (9th Cir. 2012), this court explained that a "content based" statute is one that, on its face, proscribes speech based upon its message. Typically, "'[c]ontent-based regulations are presumptively invalid.' *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992)" *Id*. It was not argued before the Agency that the regulation herein, which prohibits "interference" is content based.

constitutional power of the Government and it furthers an substantial governmental interest. The problem is that the interpretation of the exceedingly broad term "interfere with," so as to penalize Petitioner for his exercise of undoubtedly protected symbolic speech, is not narrowly tailored and is greater than is necessary to advance that government interest. Such an interpretation runs afoul of the doctrine of constitutional avoidance, which requires that the regulation "'be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score.'" *United States v. Grisel*, 488 F.3d 844, 846 (9th Cir. 2007), *quoting United States v. Jin Fuey Moy*, 241 U.S. 394, 401, 36 S.Ct. 658, 60 L.Ed. 1061 (1916)." One need only look at Judge Noonan's reading of that meaning of the term to recognize this.

> "[W]hile it is tempting to hold that First Amendment rights should acquiesce to national security in this instance, our Forefather Benjamin Franklin warned against such a temptation by opining that those 'who can give up essential liberty to obtain a little temporary safety, deserve neither liberty nor safety." We take heed of his warning and are therefore unwilling to relinquish our First Amendment protections – even in an airport."

*Tobey*, 706 F.3d at 393

Since, as has been discussed, petitioner's conduct is symbolic speech and deserving of protection, as in *Spence*, and the regulation, in its application to the facts of this case, does not pass the *O'Brien* test for permissible regulatory or

statutory constraints on the exercise of protected activity, it cannot be said that the Final Order upholding the imposition of a civil penalty was "made in accordance with applicable law, precedent, and public policy," and was prejudicial error. 49 CFR § 1503.657(b)(2) and (3).

## V. Conclusion.

For all of the above reasons, the Agency's Final Order should be reversed.

Dated 2 March, 2015

/s/ Michael E. Rose, OSB #753221
Michael E. Rose
Of Attorneys for Petitioner

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6 of the Rules of the United States Court of Appeals for the Ninth Circuit, Petitioner states that he is unaware of any related cases.

/s/ Michael E. Rose, OSB #753221
Michael E. Rose
Of Attorneys for Petitioner

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

**Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    [X]  this brief contains 7061 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

    [ ]  this brief uses a monospaced typeface and contains <state the number of> lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [X]  this brief has been prepared in a proportionally spaced typeface using WordPerfect X5 in 14 point Times New Roman, *or*

    [ ]  this brief has been prepared in a monospaced typeface using <state name and version of word processing program> with <state number of characters per inch and name of type style>.

Date: 2 March, 2015

/s/ Michael E. Rose, OSB #753221
Michael E. Rose
Of Attorneys for Plaintiff-Appellant
CREIGHTON & ROSE, PC
500 Yamhill Plaza Building
815 SW Second Avenue
Portland, Oregon 97204-3005
Tel.: (503) 221-1792
Fax: (503) 223-1516
E-mail: mrose@civilrightspdx.com

*John Brennan v. U.S. Department of Homeland Security and Transportation
Security Administration*
9th Cir. Case No. 14-73502

## CERTIFICATE OF SERVICE

I hereby certify that on this March 2, 2015, I electronically filed the foregoing

Petitioner's Brief with the Clerk of the Court for the United States Court of

Appeals for the Ninth Circuit by using the appellate CM/ECF system, and to be

served upon the following counsel through the CM/ ECF system:

William Ernest Havemann
DOJ - U.S. Department of Justice
Civil Division - Appellate Staff
Suite # 7515
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
Email:
william.e.havemann@usdoj.gov

Sharon Swingle
DOJ - U.S. Department of Justice
Civil Division - Appellate Staff
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
Email: Sharon.Swingle@usdoj.gov


*s/ Michael E. Rose*
MICHAEL E. ROSE, OSB # 753221
Attorney for Appellant

///

///

///

///

///

///

31

I further certify that on the same date I served the foregoing Petitioner's Brief by sending a true copy via the United States Postal Service First Class Mail and addressed to the following parties:

Stevan E. Bunnell
Department of Homeland Security
Office of the General Counsel
Mail Stop 3650
Washington, DC 20528

Gillian Flory
Transportation Security
Administration
TSA Headquarters
601 S. 12th St.
Arlington, VA 20598-6002

*s/ Michael E. Rose*
MICHAEL E. ROSE, OSB # 753221
Attorney for Appellant

32